# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANNMARIE M. EDWARDS,

      Plaintiff,

v.                                                                CV 14-571 JB/WPL

BOARD OF EDUCATION FOR THE
LAS CRUCES PUBLIC SCHOOLS,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Annmarie Edwards, a teacher for the Las Cruces Public Schools ("LCPS") during the 2013-2014 school year, brought a lawsuit against the Board of Education for the LCPS ("the Board") for racial discrimination, bullying and ongoing harassment, hostile work environment, failure to reasonably accommodate a known disability, and disability discrimination. Edwards brings her claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e– 2000e-17 (2012) ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101- 12213 (2012) ("ADA"); Section 28-1-4 of the New Mexico Statutes Annotated, from the New Mexico Human Rights Act ("NMHRA"); and Article two of the Classified School Employees Council of Las Cruces ("CSEC-LC") and LCPS Agreement. The Board filed a motion for summary judgment and for partial dismissal, addressing all claims except Edwards's claim for failure to reasonably accommodate a known disability. (Doc. 14.) Upon review of the briefing, the record, and the relevant law, I recommend that the Court grant the Board's motion.

## FACTUAL & PROCEDURAL BACKGROUND

The factual and procedural background found in the record and all reasonable inferences therefrom are presented in the light most favorable to Edwards. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Edwards filed a complaint in the Third Judicial District Court of the State of New Mexico on June 10, 2014. The Board removed the case to federal district court on June 20, 2014.

Edwards is a certified teacher in the State of New Mexico. She began working as a second-grade teacher at Hillrise Elementary School in Las Cruces, New Mexico, on September 10, 2013. Edwards is an African American from Jamaica.

Edwards contends that she was subject to discrimination, bullying, and harassment during her employment with LCPS, stemming from her race, national origin, and disabilities—acute mental disorder, depression, stress-induced asthma, and agoraphobia.[1] In her complaint, Edwards discussed three incidents at LCPS to support her claims. Edwards asserts that on December 13, 2013, Ms. Briggs ("Briggs"), a white Instructional Specialist, was hostile to Edwards during a teacher-coaching session. When Edwards tried to leave the session, Briggs called Fred Parker, the white/Hispanic principal, to the room, where Parker proceeded to advise Edwards that she was being insubordinate and that she could be terminated if she did not continue with the coaching sessions. Parker told Edwards that she should quit her job because he had other people he could place in her position. He stated, "[I]f [Edwards] feels that she cannot commit to the work requested of her that this might not be the place for her." (Doc. 1 Ex. 1 at 4.)

---

[1] Edwards's references to "acrophobia" (Doc. 1 Ex. 1 at 3) and "agro phobia" (Doc. 1 Ex. 1 at 4) are likely typographical errors. In her response to the Board's motion, Edwards's states that she suffers from agoraphobia. (Doc. 19 at 2-3.)

On February 11, 2014, Parker, accompanied by the building's union representative, summoned Edwards to the hallway and told her, in the hearing of Edwards's students and other teachers and students, that Parker was conducting a "thorough investigation" of Edwards. (*Id.*) Parker did not provide any specifics about the investigation.

On February 18, 2014, Edwards met with Parker and two union representatives to discuss a parent's concerns. Without providing Edwards with an opportunity to respond to the complaints, Parker reprimanded Edwards. Edwards stated that she felt that Parker was biased against her, and Parker answered, "[Y]es I am biased when it comes to African Americans and the kids." (*Id.*) Parker also stated to the group that Edwards was "emotionally unstable and he was concerned about [Edwards] returning to the classroom." (*Id.*) Parker told Edwards that he did not know how someone like her could earn a doctorate. Edwards asserts that Parker created a hostile working environment as a result of the February 18 meeting. She claims that she experienced undue emotional distress and an asthma attack as a result of that undue stress, leading to hospitalization.

The parties stipulated to certain material facts. The parties agree that Edwards was employed under a contract for temporary employment to teach second grade, lasting from September 11, 2013, to May 23, 2014. Edwards was a "temporary employee" as defined by LCPS and Edwards's exclusive bargaining agent, the National Education Association—Las Cruces ("NEA-LC"), and did not have an expectation of continued employment as a matter of state law. *See* N.M. STAT. ANN. § 22-10A-21(E). The Board of Education Policy AC prohibits discrimination against employees and provides a complaint process to remediate such conduct. Finally, the Superintendent of LCPS did not offer Edwards an employment contract for the 2014-2015 school year.

**STANDARDS OF REVIEW**

Because Edwards proceeds pro se, I construe her pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, *N.M.*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## I.     Dismissal

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. Without weighing the evidence, the court must evaluate whether it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotations omitted). In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them," with the degree of specificity required depending on the nature of the complaint. *Robbins*, 519 F.3d at 1248 (citations omitted).

## II.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "showing that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* Fed. R. Civ. P. 56(c)(4); *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

## DISCUSSION

As a preliminary matter, I address the materials I considered in developing my proposed findings. The Board acknowledges in its reply that Edwards admitted all of the undisputed material facts listed in the motion for summary judgment. However, the Board argues that the remainder of the evidence contained in Edwards's response and the documents attached thereto are inadmissible or unusable at trial and do not address the arguments contained in the Board's motion. As to the response itself, the Board contends that it is not responsive to the Board's motion and is self-serving. With regard to the attached documents, the Board asserts that the copies of emails between Edwards and her union representative contain inadmissible hearsay.

(*See* Doc. 19 Exs. B, C.)[2] The Board makes no specific objections to the remaining documents attached to Edwards's response, which include apparent recommendations from the NEA-LC to Parker regarding meetings with Edwards, Edwards's disciplinary file, and Edwards's teacher-coaching plan (Doc. 19 Ex. A); a copy of emails between Edwards and a parent regarding a student's missed work while out of school for a day (Doc. 19 Ex. D); a bill from Mountain View Regional Medical Center (Doc. 19 Ex. E); and an apparent copy of a letter from a parent to Edwards (Doc. 19 Ex. G).[3]

In 2010, the Federal Rule of Civil Procedure governing summary judgment, Rule 56, was amended, and a subdivision establishing procedures for supporting factual positions in summary judgment pleadings was added. FED. R. CIV. P. 56(c) (advisory committee's note Subdivision (c)(2)) (2010 Amendments); *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1320 (D.N.M. 2012).

> Part of this new subdivision provides that '[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.' FED. R. CIV. P. 56(c)(2). The Advisory Committee notes further clarify that an objection to cited material functions just as an objection at trial, shifting the burden to the proponent 'to show that the material is admissible as presented or to explain the admissible form that is anticipated.' FED. R. CIV. P. 56(c)(2) advisory committee's note (2010 Amendments). This change and the others made to the Rule were designed to render the procedures for summary judgment 'more consistent with those already used in many courts.' FED. R. CIV. P. 56 advisory committee's note (2010 Amendments).

*Mitchell*, 842 F. Supp. 2d at 1320.

---

[2] While the Board cites to these emails as "Exhibit D," that appears to be a typographical error. (*See* Doc. 21 at 5.)

[3] The filings do not include a document marked "Exhibit F." Edwards's response refers to an "Exhibit F," but not to an "Exhibit G." I construe the document marked "Exhibit G" to be the document cited as "Exhibit F" in the response. (*See* Doc. 19 at 3.)

With regard to the response itself, much of the response contains alleged facts that are copied and pasted from the complaint. The response also includes legal arguments and supporting facts for why Edwards believes she has demonstrated a prima facie case for discrimination. A "complaint may . . . be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Hall*, 935 F.2d at 1111. Both the complaint and the response describe alleged facts based on personal knowledge, and both have been sworn under penalty of perjury. Furthermore, although the Board cites several cases for the proposition that conclusory allegations without specific supporting facts cannot withstand a motion for summary judgment, *see, e.g.*, *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990), I conclude that Edwards has provided specific details to support her claims. As such, Edwards has met her burden of showing the admissibility of her factual allegations as evidence. I therefore treat the factual allegations in the response as an affidavit and have considered it in assessing the existence of a genuine dispute of material fact.

Because Edwards has not had the occasion to respond to the Board's objections to her attachments, I have considered the attached documents in formulating my proposed findings.

Finally, the Board included three exhibits to its motion: LCPS's letter of intent to employ Edwards for 158 days (Doc. 14 Ex. 1), a portion of a certified agreement between the Board and NEA-LC (Doc. 14 Ex. 2), and the Board's non-discrimination policy (Doc. 14 Ex. 3). Edwards did not object to these exhibits, and I reviewed and considered these exhibits in reaching my proposed findings.

## I.      Race, National Origin, and Disability Discrimination Claims

The Board argues that it is entitled to summary judgment on Edwards's race, national origin, and disability discrimination claims because Edwards has failed to establish that she

suffered an adverse employment action. Title VII provides that it is an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADA states that a covered entity shall not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff bringing a Title VII claim for discrimination has the initial burden of establishing a prima facie case containing evidence of the following elements: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citation omitted). This test is derived from *McDonnell Douglas Corp. v. Green*, which laid out the requirements for establishing a prima facie case of racial discrimination in hiring. 411 U.S. 792, 802 (1973). One way—but not the only way—in which a plaintiff can show the third element of the test is "to show that the employer treated similarly situated employees more favorably." *PVNF*, 487 F.3d at 800-01 (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).

If a plaintiff establishes a prima facie case of discrimination under Title VII, the employer then has the burden to state a "legitimate, nondiscriminatory reason for the adverse action." *PVNF*, 487 F.3d at 800 (citing *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006)). Finally, if the employer meets this burden, then the plaintiff must "show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." *Id.* (citing *Mickelson*, 460 F.3d at 1311).

A plaintiff bringing an ADA claim must show that he or she: "(1) was disabled; (2) was qualified, that is, could perform the essential functions of the job in question, with or without accommodation; and (3) suffered adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001) (citation omitted). As such, a plaintiff bringing both Title VII and ADA claims must be able to demonstrate evidence of an adverse employment action to meet a prima facie showing of discrimination under either statute.

The Board asserts that Edwards does not meet the required showing of an adverse employment action. The Board notes in its motion that Edwards made no allegation in her complaint that not being offered an employment contract for the next school year constituted an adverse employment action. In fact, the Board points out, Edwards did not mention anywhere in her complaint that she was not offered employment for the subsequent school year. The Board contends that Edwards's "allegations as to suffering an adverse employment action are limited solely to her claims of bullying, harassment and of a hostile working environment." (Doc. 14 at 12.)

Edwards provides in her response that harassment affected a term, condition, or privilege of employment, which I construe as an allegation that she suffered an adverse employment action. Specifically, she states, "Due to Mr. Parker['s] Harassment and Bullying on Plaintiff, Plaintiff was forced to take time off from her job due to the ongoing assault and harassment that plaintiff sustained under the supervision of Mr. Parker. Plaintiff['s] stress levels went up[,] which affected her health, sleep and mental condition." (Doc. 19 at 6.) This response clarifies Edwards's complaint, suggesting that the following allegation from the complaint stated her purported adverse employment action: "Mr. Parker created a hostile working environment for

Plaintiff that caused her undue emotional distress, asthma attack due to undue stress and a trip to Mountain View Regional Hospital emergency room." (Doc. 1 Ex. 1 at 4.)

"Adverse employment action" is defined liberally in the Tenth Circuit. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (citation omitted). Courts in the Tenth Circuit examine each case individually and take into account distinct factors. *Id.* (citation omitted). Nonetheless, "a mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. *Id.* (citation omitted). Rather, "conduct is [an] adverse employment action if it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In *Sanchez*, the Tenth Circuit affirmed the district court's dismissal of a constructive discharge claim because the work environment at the elementary school to which a teacher was transferred, "while unpleasant, was not [an] adverse employment action." *Id.* at 534. The court found, "While we have no doubt that [plaintiff] found her working conditions extremely difficult, and that the stress exacerbated her health problems, we cannot conclude that objectively [defendant's] actions left [plaintiff] with no choice but to resign." *Id.*

In an unpublished case, the Tenth Circuit noted that "sufficiently severe harassing, following, and monitoring of an employee could create an adverse employment action." *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (unpublished) (citation omitted). Nonetheless, the court found that the plaintiff's supervisor's monitoring of plaintiff's work as a field collector for the Albuquerque Public Works Department, which allegedly caused plaintiff humiliation and stress, was not an adverse employment action. *Id.* at 534. The court noted that

11

"[n]o change in [plaintiff's] employment status occurred: [plaintiff's] job, pay and benefits at all times remained the same." *Id.* In contrast, the court in *Mayes v. Potter* determined that there was enough evidence to create a "material fact dispute" for the jury as to whether the plaintiff experienced an adverse employment action involving disability discrimination. No. Civ.A. 03-CV-00386-B, 2006 WL 2583577, at *8 (D. Colo. Sept. 7, 2006) (unpublished). There, the plaintiff took leave without pay for approximately five months as a result of stress following a meeting. *Id.*

As previously noted, Edwards never alleged that her failure to receive an employment offer for the subsequent school year was an adverse employment action, and she agreed in her response to the Board's motion that she had no expectation in continued employment past her one-school-year contract. Therefore, I do not address the Tenth Circuit's treatment of cases involving the failure to renew a plaintiff's employment contract. Accordingly, I focus on Edwards's actual allegations.

Unlike in *Mayes*, Edwards did not allege that she had to take unpaid leave as a result of conditions at LCPS. The only evidence anywhere in the record of the specific "time off" Edwards alleged she needed to take is an email exchange between Edwards and a parent indicating that Edwards was out sick the week of January 20, 2014. (Doc. 19 Ex. D.) Even if this evidence were made admissible at trial, taking a week off of work is distinguishable from taking five months of unpaid leave. This case is more akin to *Sanchez* and *Tapia*. Edwards experienced stress affecting her health, sleep, and mental condition, similar to the plaintiff in *Sanchez*, but the Tenth Circuit found that stress exacerbating health problems is not necessarily sufficient to constitute an adverse employment action. 164 F.3d at 534. Here, as in *Tapia*, there was no change in Edwards's job, pay, or benefits. Edwards continued to teach second grade pursuant to

her contract for the duration of the contract. I conclude that there is no genuine dispute of material fact as to whether Edwards suffered an adverse employment action, and I therefore recommend that the Court grant summary judgment in favor of the Board with regard to Edwards's discrimination claims.

## II.        Hostile Work Environment Claim

The Board argues that it is also entitled to summary judgment or dismissal with prejudice as to Edwards's hostile work environment claim. Because the Board has provided attachments to its motion and has not separated out its arguments for dismissal with prejudice and for summary judgment, I am not limited to examining the "four corners of the complaint." *See Iqbal*, 556 U.S. at 679 (citation omitted). I therefore construe the Board's argument as to the hostile work environment claim as a motion for summary judgment.

Title VII and the ADA are violated when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)); *see also Lanman v. Johnson Cnty., Kan.*, 393 F.3d 1151, 1155 (10th Cir. 2004) (holding actionable hostile work environment claims brought pursuant to the ADA). The test is a disjunctive one, requiring Edwards to prove that the harassing conduct was either severe or pervasive enough to create a hostile work environment. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997). The conduct must be "extreme" in order to affect the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Edwards must prove that she was targeted for harassment because of her race, national origin, or disability. *Herrera*, 474 F.3d at 680 (citing *Sandoval*, 388 F.3d at 1327); *see Lanman*, 393 F.3d at 1155. The workplace must be both objectively and subjectively offensive: "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. In deciding whether or not a hostile environment existed, it is necessary to look at all of the circumstances involved in the situation, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nieto v. Kapoor*, 268 F.3d 1208, 1218 (10th Cir. 2001) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). The law does not "establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a . . . hostile work environment claim." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 663-64 (10th Cir. 2012)).

Several Tenth Circuit cases have affirmed decisions that the plaintiff failed to show that the conduct was pervasive or severe. In *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005), and *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998), the court held that two racially offensive comments over a two-year period fell far short of the "steady barrage" required for a hostile environment claim. Similarly, in *Bolden v. PRC Inc.*, the court affirmed the summary judgment granted to the defendant when the plaintiff experienced two overtly racial remarks and one arguably racial comment in eight years, also not achieving a "steady barrage of opprobrious racial comment[s]." 43 F.3d 545, 551 (10th Cir. 1995).

14

In contrast, in *Herrera*, the Tenth Circuit reversed a grant of summary judgment for the defendant on the plaintiff's hostile work environment claim. 474 F.3d at 690. The court stated that whether a workplace is permeated with discriminatory insults that are sufficiently severe or pervasive to create a hostile work environment "is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Id.* at 680 (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)). In reversing the summary judgment granted to the defendant, the court recognized that the plaintiff presented evidence of five or six discrete incidents of racial harassment by his supervisor, plus evidence of other harassment, that occurred over four years. *Id.* at 680-81.

Similarly, in *Smith*, the court found that proof of six sexually inappropriate statements made by a supervisor over a 23-month period was sufficient to support a finding of pervasive harassment. 129 F.3d at 1415. Finally, in *Hernandez*, the court found that a reasonable jury could find that the plaintiff suffered from a hostile work environment where plaintiff was subjected to racially offensive comments and jokes eight to eleven times in fourteen months, along with plaintiff's family being accused of not paying for lunch, plaintiff being accused of her family member being a murderer on account of plaintiff's last name, and plaintiff being yelled at for a mess in the cafeteria. 684 F.3d at 955, 958. The court found that a jury could find that plaintiff "experienced more than a 'handful' of 'sporadic' racially derogatory jokes and comments." *Id.* at 958. Further, although the defendant argued that the final three incidents were race-neutral, the court found that

> when a plaintiff introduces evidence of both [race]-based and [race]-neutral harassment, and when a jury, viewing the evidence in context, reasonably could view all of the allegedly harassing conduct . . . as the product of [racial] hostility, then it is for the fact finder to decide whether such an inference should be drawn.

*Hernandez*, 684 F.3d at 960 (quoting *Chavez*, 397 F.3d at 833).

The Board argues that Edwards has established neither severity nor pervasiveness of harassment required under Title VII and the ADA. The Board asserts that there was not a steady barrage of opprobrious comments, a single extreme incident, or a physically threatening or humiliating incident that changed Edwards's conditions of employment. The Board points out that Edwards relies on only three job-related incidents with her school principal in the workplace to support her Complaint.  Edwards responds with the conclusory statement that she experienced harassment so severe and pervasive that it affected a term, condition, or privilege of employment.

I conclude that Edwards has failed to show that a reasonable jury could find that she suffered from a hostile work environment. Edwards alleged only three incidents of harassment in her Complaint. Only one of the incidents allegedly involved a statement of racial hostility (and none involved statements of hostility towards disability), wherein Edwards asserted that Parker stated, "[Y]es[,] I am biased when it comes to African Americans and the kids." As previously noted, there are no laws establishing civility codes in the workplace—Title VII and the ADA, as applicable here, require harassment based on race, national origin, or disability. Assuming that Parker did make the statement about bias against African Americans when it comes to the schoolchildren, this was only one instance of a racially offensive comment, not the "steady barrage of opprobrious racial comments" required under Title VII. *Bolden*, 43 F.3d at 551.

Although race-neutral harassment could be seen as the "product of [racial] hostility" when viewed in context, here there is only one allegation of a statement of racial hostility, amid three overall allegations of harassment. *See Hernandez*, 684 F.3d at 960 (quotation omitted). In *Hernandez*, wherein the court found that a jury could find all of the harassing conduct to be race-

16

based, the majority of the allegations involved race-based comments, while only a few harassing incidents were facially race-neutral. 684 F.3d at 955, 958, 960. Here, in the presence of only one racially hostile comment, a jury could not reasonably view all three of the alleged incidents of harassment as racially motivated.

I therefore recommend that the Court find that Edwards has not shown a genuine dispute of material fact over whether her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Herrera*, 474 F.3d at 680. As such, I recommend that the Court grant summary judgment to the Board as to Edwards's hostile work environment claim. Because I conclude that Edwards has not shown evidence such that a reasonable jury could find that she was subjected to a hostile work environment, I do not address liability of the Board on negligence or vicarious liability theories.

### III. New Mexico Human Rights Act Claim

Edwards raised a claim for "illegal employment discrimination" under the NMHRA in her Complaint. The Board argues that Edwards failed to exhaust her administrative remedies for this claim and that, therefore, her NMHRA claim should be dismissed without prejudice.

A plaintiff must administratively exhaust an NMHRA claim before bringing the claim in federal court. *Bates v. N.M. Corr. Dep't*, No. CIV-08-1013 JB/RLP, 2010 WL 4339367, at *7 (D.N.M. Sept. 30, 2010) (unpublished). When a party challenges the jurisdiction of the court on the basis of exhaustion, the plaintiff must show by a preponderance of the evidence that he or she has exhausted administrative remedies. *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1247-48 (D.N.M. 2013).

Edwards asserted in her Complaint that she exhausted administrative remedies by filing a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and receiving a notice of right to sue, which she attached to the Complaint. (Doc. 1 Ex. 1 at 9.) "Complaints filed with the EEOC are deemed properly filed with the [New Mexico Human Rights] Division." *Rist v. Design Ctr. at Floor Concepts*, 314 P.3d 681, 684 (N.M. Ct. App. 2013). However, if a plaintiff wishes to proceed with a state law claim, he or she must follow the grievance process provided under state law. *Id.* at 684-85. A plaintiff must receive an order of nondetermination from the Division in order to proceed in court. *Id.* at 685 (citing *Mitchell-Carr v. McLendon*, 980 P.2d 65, 70 (N.M. 1999)). An EEOC right-to-sue letter cannot be substituted for an order of nondetermination from the Division. *Id.* Without such an order of nondetermination, a plaintiff has failed to exhaust administrative remedies under the NMHRA. *Id.*

Edwards failed to respond in any manner to the Board's objection that she had not exhausted her administrative remedies under state law. Further, there is no order of nondetermination in the record. As such, I recommend that the Court find that Edwards has not established by a preponderance of the evidence that she has exhausted her administrative remedies and that this Court does not have jurisdiction to hear Edwards's NMHRA claim. Accordingly, I recommend that the Court dismiss Edwards's NMHRA claim without prejudice.

## IV. Classified School Employees Council of Las Cruces (CSEC-LC) and LCPS Agreement Claim

Edwards brought a claim for harassment, bullying, and discriminatory treatment pursuant to Article two of the CSEC-LC and LCPS Agreement. However, the Board pointed out that this agreement is not applicable to Edwards and that the collective bargaining agreement with the

NEA-LC is the sole, exclusive collective bargaining agreement applicable to Edwards. Edwards admitted in her response that it is undisputed that the NEA-LC is her exclusive collective bargaining agent. Because the parties agree that the CSEC-LC/LCPS agreement does not apply to Edwards, I recommend that the Court dismiss this claim with prejudice for failure to state a claim upon which relief may be granted.

<div align="center">CONCLUSION</div>

I conclude that no reasonable jury could find that Edwards suffered an adverse employment action as required under Title VII and the ADA, and I therefore recommend that the Court grant summary judgment in favor of the Board as to Edwards's discrimination claims. I also conclude that no reasonable jury could find that Edwards was subjected to a hostile work environment, and I therefore recommend that the Court grant summary judgment in favor of the Board as to Edwards's hostile work environment claim. I also find that Edwards has not shown by a preponderance of the evidence that she exhausted her administrative remedies as to her NMHRA claim; thus, I recommend that the Court dismiss Edwards's NMHRA claim without prejudice. Finally, because the parties have agreed that the CSEC-LC and LCPS Agreement does not apply to Edwards, I recommend that the Court dismiss this claim with prejudice. Because the briefing does not address Edwards's claim for failure to reasonably accommodate a known disability, I recommend that the Court find that this claim remains outstanding.

<div style="border:1px solid black; padding:8px;">
**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**
</div>

William P. Lynch
United States Magistrate Judge